UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEREMY BENTON | CIVIL ACTION |
| VERSUS | NO. 19-9985 |
| BP EXPLORATION & PRODUCTION, INC. ET AL. | SECTION "J" (2) |

* * * * * * * * *

| | |
|---|---|
| JOSE MONTALVO | CIVIL ACTION |
| VERSUS | NO. 19-9987 |
| BP EXPLORATION & PRODUCTION, INC. ET AL. | SECTION "J" (2) |

Related to:   12-968 BELO
              in MDL 10-2179

## REPORT AND RECOMMENDATION

Jeremy Benton and Jose Montalvo, plaintiffs in these two cases, were employed as clean-up workers along the Louisiana Gulf coast after the BP/Deepwater Horizon explosion and oil spill on April 20, 2010. Complaint, Record Doc. No. 1 in C.A. Nos. 19-9985 and 19-9987. Both plaintiffs, who are represented by the same counsel, filed their respective complaints pursuant to the Back-End Litigation Option ("BELO") provisions of the BP/Deepwater Horizon Medical Benefits Class Action Settlement Agreement ("Medical Settlement Agreement"). Record Doc. Nos. 6427-1 and 8218 in MDL No. 10-md-2179. As members of the BELO settlement class, plaintiffs seek compensatory damages and related costs for later-manifested physical conditions that they allegedly suffered as a result

of exposure to substances released after the oil spill. Record Doc. No. 1 at ¶¶ 10-17 in C.A. Nos. 19-9985 and 19-9987.

Defendants, BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), filed nearly-identical motions to dismiss each plaintiff's complaint. Record Doc. No. 4 in C.A. Nos. 19-9985 and 19-9987. BP argues that each plaintiff failed properly to file his individual BELO lawsuit by the Medical Settlement Agreement's filing deadline and that the complaints should be dismissed <u>with</u> prejudice as time-barred.

Plaintiffs filed untimely opposition memoranda without seeking leave of court to do so. Record Doc. No. 5 in C.A. Nos. 19-9985 and 19-9987. Nevertheless, I considered their memoranda and deferred ruling on the motions, allowing defendants time to file responses to plaintiffs' opposition memoranda. Record Doc. No. 6 in C.A. Nos. 19-9985 and 19-9987. Defendants did so on June 26, 2019. Record Doc. No. 7 in C.A. Nos. 19-9985 and 19-9987. Plaintiffs were each permitted to file sur-replies, Record Doc. Nos. 8, 9, 10 in C.A. No. 19-9985 and Record Doc. Nos. 8, 10, 11 in C.A. No. 19-9987. Defendants were then permitted to file sur-sur-replies. Record Doc. Nos. 11, 12, 13 in C.A. No. 19-9985 and Record Doc. Nos. 9, 12, 13 in C.A. No. 19-9987. Plaintiffs were then permitted to substitute exhibits to their sur-replies. Record Doc. No. 14, 16 in C.A. No. 19-9985 and Record Doc. Nos. 14, 15 in C.A. No. 19-9987.

The Claims Administrator's Notices of Election Not to Mediate in both cases are dated October 26, 2018. Record Doc. No. 4-4 in C.A. Nos. 19-9985 and 19-9987. Plaintiffs did not file their separate, individual BELO lawsuits until May 1, 2019, five (5) days after the six-month filing deadline of April 26, 2019 had passed. However, plaintiffs make several arguments against dismissal of their complaints. They argue that they filed their lawsuits within six months from the day they <u>received</u> the letter from the Claims Administrator of BP's Election Not to Mediate—November 6, 2018—which would make their filing deadline six months from that date, or May 6, 2019. Record Doc. No. 5 at p. 3 in C.A. Nos. 19-9985 and 19-9987. In the alternative, plaintiffs assert that even if the six-month deadline is determined by the date on BP's Election Not to Mediate—October 26, 2018—the deadline should be May 2, 2019, because Fed. R. Civ. P. 6(a) applies when counting time and the first day that was not a Saturday, Sunday or legal holiday was April 29, 2019. Though they filed <u>after</u> this date, plaintiffs argue that Fed. R. Civ. P. 6 also provides that when a party must act within a specified time after being served, three days are added after the period would otherwise expire. <u>Id.</u> at pp. 3–4. Thus, plaintiffs argue, since they were required to act within a specified time by filing suit, the deadline was May 2, 2019, and so they filed their lawsuits timely on May 1, 2019. <u>Id.</u> at p. 4. In the further alternative, plaintiffs argue that their late filing should be excused because of a calendering error in calculating the deadline. <u>Id.</u> at pp. 5–7. Plaintiffs also argue that the court should

extend the deadline for good cause for excusable neglect because the language in the Medical Settlement Agreement is "confusing;" they allege that "in drafting their pleadings, even BP reiterated the same understanding of the [Medical Settlement Agreement] filing deadline that [p]laintiff had six months after receiving notice." Id. at pp. 7–8 (emphasis plaintiffs'). Plaintiffs argue that since BP is allowed six months from the date they receive a valid [Notice of Intent to Sue] to respond with their decision of whether or not to mediate, plaintiffs should be awarded the same standard. Record Doc. No. 5 at p. 8 in C.A. Nos. 19-9985 and 19-9987.

Having considered the written submissions of the parties, the record and the applicable law, I recommend that BP's motions to dismiss be GRANTED for the following reasons.

## **ANALYSIS**

The court-approved Medical Settlement Agreement is not a case management order. Instead, it is an unambiguous, binding contract that cannot be modified or altered without the express written consent of the Medical Benefits Class Counsel and BP's counsel. Record Doc. No. 6427-1 at § XXX(C) IN 10-md-2179. The BELO lawsuit process is the exclusive remedy for class members who did not opt out of the settlement and who seek compensation for Later-Manifested Physical Conditions, as defined in the agreement. Id. at § II(VV).

4

As a condition precedent to filing a BELO suit, a class member must submit a Notice of Intent to Sue to the Medical Settlement Agreement Claims Administrator (the "Claims Administrator"), who must transmit the notice to BP within ten days. BP then has 30 days to decide whether to mediate the claim. If, as in the two instant cases, BP chooses not to mediate, the claimant must file his BELO lawsuit within six months of "notice" by the Claims Administrator of BP's election not to mediate. Id. at §§ VIII(A), (C)(1), (C)(2), (G)(1)(b).

The CMO governs basic procedural matters at the outset of BELO cases. The CMO permits the parties to move to dismiss an individual BELO complaint with<u>out</u> prejudice for failure to complete the conditions precedent to filing a lawsuit. Record Doc. No. 3, CMO at ¶ IV(1)(A). BP argues that the instant action should be dismissed <u>with</u> prejudice because plaintiff's untimely filing of his lawsuit cannot be cured by amending the complaint or granting her additional time to comply with the conditions precedent. BP asks the court to modify the CMO in this particular case, as provided in Paragraph IV(1)(D), to allow for a dismissal with prejudice. The CMO governs limited initial proceedings, principally to determine the appropriate venue in which each case should proceed, but also to ensure compliance with pre-suit filing procedures set out in the Medical Settlement Agreement. At the time it was issued, I optimistically anticipated only curable pre-filing administrative

5

deficiencies, not that a plaintiff's failure would be to miss one of the absolute deadlines established in the Medical Settlement Agreement.

The clear language of the Medical Settlement Agreement emphasizes the binding and enforceable nature of the subject deadline. It mandatorily requires that "[a]ny BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT **must** be filed within 6 months of . . . (a) **notice** by the CLAIMS ADMINISTRATOR to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER of the election of all BP defendants named in the NOTICE OF INTENT TO SUE not to mediate . . . ."

In their opposition memoranda, plaintiffs admit that the Claims Administrator dated the Notice of Election Not to Mediate October 26, 2018. Record Doc. No. 5 at p. 3 in C.A. Nos. 19-9985 and 19-9987. They also admit that they did not file their separate lawsuits until May 1, 2019. Id. at p. 1. However, they assert that they did not receive the Notice until November 6, 2018, and because they believed they had six months from the date of receipt to file suit, their filing was timely under their interpretation of the Medical Settlement Agreement. Record Doc. Nos 5 at p. 3; 5-1 at p. 2 in C.A. Nos. 19-9985 and 19-9987. In the alternative, if their filing was late, it should be excused because of either a calendering error or because the Medical Settlement Agreement language is "confusing." Record Doc. No. 5 at pp. 5–9 in C.A. Nos. 19-9985 and 19-9987.

In its reply memoranda, BP argues that the six-month deadline runs from the date posted on the Notice, and, in the alternative, from the date the Notice was posted to the online portal. Record Doc. No. 7 at pp. 3–9. In support of their position, BP relies on the language of the relevant section in the court-approved Medical Settlement Agreement and contrasts it with other sections which mention receipt to show that the Medical Settlement Agreement "distinguishes between deadlines that commence upon 'receipt' of a notice or other types of documents, and those that commence upon the date of the document itself." Id. at pp. 6–7. BP cites Record Doc. No. 6427-1 at § V(E) (". . . The NOTICE OF DEFECT shall be sent no later than 30 days from the date of **receipt** of the PROOF OF CLAIM FORM by the CLAIMS ADMINISTRATOR or 30 days from the EFFECTIVE DATE, whichever is later. . . .") (emphasis added); Record Doc. No. 6427-1 at § V(M) (". . . The MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall make such request in writing to the CLAIMS ADMINISTRATOR within 14 days of **receipt** of a NOTICE OF DENIAL . . . .") (emphasis added); Record Doc. No. 6427-1 at § VIII(C)(1) ("Within 10 days of the **receipt** by the CLAIMS ADMINISTRATOR of a compliant NOTICE OF INTENT TO SUE, or the EFFECTIVE DATE, whichever is later, the CLAIMS ADMINISTRATOR shall transmit such NOTICE OF INTENT TO SUE to all BP defendants named in that NOTICE OF INTENT TO SUE. Within 30 days of **receipt** of such NOTICE OF INTENT TO SUE, each BP defendant shall notify the CLAIMS

7

ADMINISTRATOR whether it chooses to mediate the claim.") (emphasis added); and Record Doc. No. 6427-1 at § VIII(C)(2) ("Within 10 days of **receipt** of a BP defendant's notification of its decision to mediate, the CLAIMS ADMINISTRATOR will notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that a BP defendant named in the NOTICE OF INTENT TO SUE has exercised the mediation option. . . .") (emphasis added) and contrasts those provisions with the language of Record Doc. No. 6427-1 at § V(E) (". . . The submission containing such curative documentation must be submitted to the CLAIMS ADMINISTRATOR no more than 120 days following the date the NOTICE OF DEFECT **was sent** to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER. . . . ") (emphasis added) and Record Doc. No. 6427-1 at § V(N) (". . . Any such challenge must be filed by such NATURAL PERSON with the COURT within 60 days after the notice of the CLAIMS ADMINISTRATOR'S determination **is sent** to that NATURAL PERSON.") (emphasis added). Id.

Other deadlines in the Medical Settlement Agreement, including the deadline at issue in these cases, depend on the date of notice rather than receipt or the date the document is sent. See, e.g., Record Doc. No. 6427-1 at § VIII(G)(1)(b) in 10-md-2179 ("Any BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT must be filed within 6 months of either: (a) **notice** by the CLAIMS ADMINISTRATOR to the MEDICAL BENEFITS SETTLEMENT

CLASS MEMBER of the election of all BP defendants named in the NOTICE OF INTENT TO SUE not to mediate . . . .) (emphasis added) and Record Doc. No. 6427-1 at § VIII(C)(3) ("If any BP defendant named in the NOTICE OF INTENT TO SUE exercises its option to mediate, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall, **within 60 days of such notification** by the CLAIMS ADMINISTRATOR . . . .") (emphasis added); Record Doc. No. 6427-1 at § VIII(E)(6) (". . . they shall notify the mediator, who shall, **within 10 days of such notification**, submit a written notice to the CLAIMS ADMINISTRATOR, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and the mediating BP defendant(s), certifying that the mediation has been concluded and was unsuccessful.") (emphasis added).

In response to my previous order, Record Doc. No. 6 in C.A. Nos. 19-9985 and 19-9987, BP also attached evidence to its reply memoranda. BP submitted the affidavit of Katharine H. Hosty, on behalf of the Medical Benefits Class Action Settlement Claims Administrator. Record Doc. No. 7-1 in C.A. Nos. 19-9985 and 19-9987. In her affidavit, Hosty attests that she is associate general counsel and associate vice president of the Garretson Resolution Group ("Garretson" or "Claims Administrator"), the Claims Administrator of the Deepwater Horizon Medical Benefits Class Action Settlement, and that she has personal knowledge of the procedures used by the Claims Administrator in the BELO process. Id. at p. 3. She states in her affidavit that the Claims Administrator's

9

practice when claimants are represented by counsel "is to send a Notice to their counsel via First Class, U.S. Mail. Additionally, within two business days of the mailing, the Claims Administrator also uploads an electronic copy of the Notice to the respective law firm's . . . portal (which [Garretson] developed, maintains, and operates)." Hosty attests that she has "reviewed the records concerning the transmittal of the Notices of Election Not to Mediate ("Notice") for Jose Montalvo and Jeremy Benton to their counsel . . . , which show that on October 26, 2018 the Notices were issued via First Class, U.S. Mail and, on October 30, 2018 (Tuesday, two business days later) subsequently uploaded to the [Garretson]-maintained online portal for the [plaintiffs' law firm]." BP alleges that since the plaintiffs' law firm had access to the portal and the documents were posted to the portal on October 30, 2018, even if the deadline was determined by the date of receipt, plaintiffs' deadline to file was April 30, 2018. Record Doc. No. 7 at pp. 8–9 in C.A. Nos. 19-9985 and 19-9987.

In their sur-replies, plaintiffs maintain that "notice" means the date of receipt of the Notice by regular mail, and make a variety of arguments against notice being determined by the date the Notice of Election Not to Mediate is posted to the online portal. Record Doc. No. 11 at pp. 2–5 in C.A. Nos. 19-9985 and Record Doc. No. 10 at pp. 2–5 in 19-9987. In support of these arguments, plaintiffs attach a portion of the online portal handbook and emails between plaintiffs' law firm and a representative of Garretson. Record Doc. Nos. 11-1; 11-2; 14-2 in C.A. No. 19-9985 and Record Doc. No. 10-1; 10-2; 14-2 in

10

C.A. No. 19-9987. The online portal handbook states that the ". . . Claims Administrator created the . . . Attorney Portal as a way for authorized representing attorneys to review the status of specific cases currently under consideration by the Claims Administrator." Record Doc. No. 11-1 at p. 4 in C.A. Nos. 19-9985 and Record Doc. No. 10-1 at p. 4 in C.A. Nos. 19-9987. In the attached emails, the Garretson representative, Jessica Doescher, states on March 5, 2018 that "[t]he Attorney Portal was made for the [Specific Physical Condition] benefit. Although you are able to see some [Later-Manifested Physical Condition] cases in the Portal, they will not all be visible." Record Doc. No. 14-2 at p. 2 in C.A. Nos. 19-9985 and 19-9987. Doescher also states on April 12, 2018 that "The portal is specifically for [Specific Physical Condition] use. Although there are some [Later Manifested Physical Condition] claims that are visible on the portal, the general population will not be available on the [Specific Physical Condition] Portal [and] [a]t this point in time, . . . there will not be one created specifically for [Later-Manifested Physical Condition] use." Id. at pp. 3-4.

Plaintiffs also provided the affidavit of Kristin Ferguson, case manager for the BP Medical BELO claims at the plaintiffs' law firm, who attests that the "Firm did not receive login credentials to [Garretson] portals until February 16, 2016 . . . [and] [t]he firm has had consistent issues with the portal system, such as documents uploaded and labeled with the incorrect file name, confidential documents uploaded to the incorrect client's portal, no portal access at all for multiple days on numerous occasions, individual client portals

11

missing history of entire claim, and documents missing entirely from the portal." Record Doc. No. 11-3 at p. 2 in C.A. Nos. 19-9985 and Record Doc. No. 10-3 at p. 2 in C.A. No. 19-9987. Significantly, Ferguson also attests that the "Firm has never received electronic notifications, automatic or otherwise, when a document has been uploaded to an individual client's portal. There has not been consistency in when documents are uploaded to the portals by [Garretson]. There have been many times that documents are received via USPS mail by our firm and not yet uploaded to the client's portal by [Garretson]. The documents were only uploaded after our firm notified [Garretson] of the deficiencies and on multiple occasions [Garretson] would take months for the deficiencies to be corrected in the portal. The information accessible in the online portal is not reliable and frequently requires back and for[th] electronic communication with [Garretson] representatives for correction." Id. Plaintiffs assert that the Claims Administrator's practices of uploading the documents to the portal within two business days is regularly not followed. In support of this assertion, plaintiffs point to two other cases in which the Claims Administrator allegedly sent those plaintiffs' Notice of Election Not to Mediate but did not upload those documents to the online portal. Plaintiffs attach screen shots of those claimants' files in the online portal. Record Doc. Nos. 14-3 at pp. 2–3 in C.A. Nos. 19-9985 and 19-9987.

    BP is correct that the language in Section VIII(G)(1)(b) of the Medical Settlement Agreement, in contrast with other provisions in the same document, does not contain the

word receipt or reference the date the document is sent. Instead, the six-month deadline begins from the date of "notice" by the Claims Administrator to the Medical Benefits Class Member of BP's election not to mediate. Record Doc. No. 6427-1 at § VIII(G)(1)(b).

There are three possible interpretations of the meaning of "notice" in the relevant provision of the Medical Settlement Agreement. First, "notice" could mean the date the Notice of Election Not to Mediate is posted to the online portal. However, it is apparent from the evidence submitted by the plaintiffs' law firm that the online portal created by the Claims Administrator contains issues that are unresolved in some cases. In her affidavit, Ferguson attests that the portal does not notify counsel of a document's presence in the claimant's online file, and that documents are sometimes not uploaded in accordance with the Claims Administrator's policies. Record Doc. No. 11-3 at p. 2 in C.A. Nos. 19-9985 and Record Doc. No. 10-3 at p. 2 in C.A. No. 19-9987. Because of the unreliability of the portal, I find that "notice" cannot mean the date that the Notice of Election Not to Mediate is posted to the portal by the Claims Administrator.[1]

Second, "notice" could be interpreted to mean the date on which a claimant or his counsel <u>receives</u> the Notice of Election Not to Mediate by regular mail. However, various issues prevent "notice" from meaning the date that the claimant or his counsel receives the

---

[1] Even if I were to find that "notice" means the date that the Claims Administrator posts the Notice to the online portal, which in this case was October 30, 2019, plaintiffs' complaints would have been due on April 30, 2019, six months after that date. Plaintiffs untimely filed their complaints on May 1, 2019, one (1) day after that date.

13

Notice. As noted above, the relevant provision makes no mention of "receipt," in contrast with other provisions in the Medical Settlement Agreement. Additionally, if the six-month deadline was determined by the date each claimant receives the Notice, there would be no consistent basis for the court to determine exactly when each claimant received it, which would make it impossible for the court to enforce the court-approved deadlines in the Medical Settlement Agreement.

Third, "notice" can be interpreted to mean the date the document is mailed to each claimant and is written on the Notice itself. As noted above, Hosty attests in her affidavit that the Claims Administrator's practice is to send the Notices to claimants via First Class, U.S. Mail the date that they are marked in each Notice. She also attests that she reviewed the Garretson records and determined that the Notices were mailed on October 26, 2018, the date written on the Notices. Record Doc. No. 7-1 in C.A. Nos. 19-9985 and 19-9987. Though plaintiffs argue that Garretson's practices are not always followed and reference two cases involving other claimants represented by the same law firm, plaintiffs neither argue nor present evidence that the Notices in these cases were not mailed on the date written on the Notices.

Additionally, the Medical Settlement Agreement specifically charges the Claims Administrator to "faithfully implement and administer the MEDICAL SETTLEMENT AGREEMENT according to its terms and procedures, . . . including . . . [c]reation and

operation of a claims processing system to process all claims made by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS; [and] [r]eviewing and evaluating submitted claims so that, upon the EFFECTIVE DATE, (1) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS can promptly be notified of the status of their claims . . . ." Record Doc. No. 6427-1 at § XXI(A)(1), (8)(b)–(g). In the course of these duties, the Claims Administrator specifically notes on the Notices of Election Not to Mediate that "[THE MEDICAL BENEFITS SETTLEMENT CLASS MEMBER] SHOULD FILE ANY BACK-END LITIGATION OPTION LAWSUIT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA **WITHIN SIX MONTHS OF THE DATE OF THIS NOTICE**." Record Doc. No. 7-2 in C.A. Nos. 19-9985 and 19-9987.

This view of the meaning of "notice" in the instant provision of the Medical Settlement Agreement is consistent with my recommendations and Judge Barbier's decisions in prior cases involving similar facts. See, e.g., Farmer v. BP Expl. & Prod., Inc. et al., C.A. No. 19-9237, Record Doc. No. 9, (E.D. La. May 29, 2019), report and recommendation adopted, Record Doc. No. 10 (E.D. La. June 17, 2019); Wiggins v. BP Expl. & Prod., Inc. et al, C.A. No. 19-1425, Record Doc. No. 5, (E.D. La. Apr. 3, 2019), report and recommendation adopted, Record Doc. No. 6 (E.D. La. Apr. 24, 2019); King v. BP Expl. & Prod., Inc., et al., C.A. No. 19-1081, Record Doc. No. 5, (E.D. La. Mar. 27,

2019), report and recommendation adopted, Record Doc. No. 6 (E.D. La. Apr. 15, 2019); Deacon v. BP Expl. & Prod., Inc. et al., C.A. No. 19-711, Record Doc. No. 9, (E.D. La. Mar. 20, 2019), report and recommendation adopted, Record Doc. No. 10 (E.D. La. Apr. 24, 2019); Londrow v. BP Expl. & Prod., Inc. et al., C.A. No. 19-599, Record Doc. No. 9, (E.D. La. Mar. 13, 2019), report and recommendation accepted as modified, Record Doc. No. 12 (E.D. La. Apr. 16, 2019); Hartsell v. BP Expl. & Prod., Inc. et al, C.A. No. 19-443, Record Doc. No. 9, (E.D. La. Mar. 13, 2019), report and recommendation adopted, Record Doc. No. 10 (E.D. La. Mar. 28, 2019); Guerra v. BP Expl. & Prod., Inc., et al., C.A. No. 19-386, Record Doc. No. 5, (E.D. La. Mar. 13, 2019), report and recommendation adopted, Record Doc. No. 6 (E.D. La. Mar. 28, 2019); Pinsdorf v. BP Expl. & Prod., Inc. et al., C.A. No. 18-14315, Record Doc. No. 9, (E.D. La. Feb. 28, 2019), report and recommendation adopted, Record Doc. No. 12 (E.D. La. Apr. 9, 2019). For these reasons, I find that "notice" must be interpreted to mean the date the document is mailed to each claimant, which is written on the document itself.

Plaintiffs argue in the alternative that, even if the six-month deadline is determined by the date on the Notice, Fed. R. Civ. P. 6 applies to the instant case and provides for three extra days when a party may or must act within a specified time after being served and service is made under Fed. R. Civ. P. 5(b)(2)(c) (by mail). Record Doc. No. 5 at pp. 3–4 in C.A. Nos. 19-9985 and 19-9987. However, Fed. R. Civ. P. 6 does not apply to the instant

16

case. The Medical Settlement Agreement is not a "local rule or court order, or . . . [a] statute that does not specify a method of computing time." Fed. R. Civ. P. 6(a). Instead, it is the governing law between the parties and, as stated above, is <u>not</u> simply a Rule 16 case management order, but a contract that cannot be modified or altered without the express consent of the Medical Benefits Class Counsel and BP's counsel. Record Doc. No. 6427-1 at § XXX(C) in 10-md-2179. The six-month deadline in the Medical Settlement Agreement is binding and enforceable and is separate from the methods of counting time in Fed. R. Civ. P. 6.

Plaintiffs argue in the alternative that if their filing was late, it should be excused because of a calendering error by legal staff. Plaintiffs attach another affidavit of Kristin Ferguson, in which Ferguson attests that "[o]ne of my responsibilities at the firm . . . on this docket is to calendar the filing deadlines for the attorney in regard to lawsuits against BP. At the time, I believed the deadline to file the lawsuit was six months from the date our office <u>received</u> BP's Notice Not to Mediate the claim rather than six months from the date actually listed on the letter as being mailed." Courts have frequently held that lawyer or legal staff failings of this sort do <u>not</u> excuse untimely filings after a statute of limitations or other time bar on the assertion of claims have lapsed. <u>See</u> <u>Symbionics Inc. v. Ortlieb</u>, 432 Fed. App'x. 216, 220 (4th Cir. 2011) ("We find nothing extraordinary or unusual about counsel's calendaring error that should relieve [plaintiff] of its duty to comply with the time

17

limit . . . . Counsel's total dependance on a computer application . . . to determine the filing deadline . . . [is] the very essence of counsel's negligence here."); Shorette v. Harrington, 234 Fed. App'x. 3, 5 (2d Cir. 2007) (finding that a calendaring error does not constitute "excusable neglect" which would allow plaintiff to file a motion in response to defendant's motion for summary judgment); Magraff v. Lowes HIW, Inc., 217 Fed. App'x. 759, 761 (10th Cir. 2007) ("We find that the district court properly . . . den[ied plaintiff's] motion for an extension and reconsideration . . . [where] the actual reason why the notice of appeal was not timely filed was counsel's error in calendaring the deadline.") (emphasis in original). Thus, this argument is unpersuasive.

Plaintiffs also argue that if their filing was late, it should be excused because the language in the Medical Settlement Agreement is "confusing." Plaintiffs point to a heading in BP's motion to dismiss, Record Doc. No. 4-3 at p. 3 in C.A. Nos. 19-9985 and 19-9987, and allege that "in drafting their pleadings, even BP reiterated the same understanding of the [Medical Settlement Agreement] filing deadline that [p]laintiff had six months after receiving notice." Record Doc. No. 5 at pp. 7–8 in C.A. Nos. 19-9985 and 19-9987. (emphasis plaintiffs'). Plaintiffs argue that since BP is allowed six months from the date they receive a valid [Notice of Intent to Sue] to respond with their decision of whether or not to mediate, plaintiffs should be awarded the same standard. Record Doc. No. 5 at p. 8 in C.A. Nos. 19-9985 and 19-9987. I do not accept these arguments for the reasons stated

above. Reliance on a mere heading in a motion to claim that BP's position is that the six months begin on receipt rather than on notice would be misplaced. As noted above, the Medical Settlement Agreement has various deadlines and different language pertaining to each provision containing those deadlines. While BP or the Claims Administrator may have a deadline or deadlines that are triggered by receipt, rather than notice, the Medical Settlement Agreement and the deadlines and language therein were approved by the court following public notice, consideration of objections, lengthy briefing and submissions by the parties. Now is not the time for plaintiff to object to the different kinds of deadlines set out in the Medical Settlement Agreement.

    For all the above reasons, the deadline to file plaintiffs' complaints was six months after the date the Notices were mailed, or April 26, 2019, as written on the Notices themselves. Plaintiffs filed their complaints five (5) days late, on May 1, 2019. The requirement to satisfy this condition precedent is not a mere case management tool, but is required by the court-approved Medical Settlement Agreement and is not subject to alteration. Plaintiffs failed to meet the condition precedent to filing a BELO complaint by timely filing their lawsuits. No purpose would be served by dismissing these cases with<u>out</u> prejudice, when their untimely filing under the Medical Settlement Agreement clearly means that their claims are barred and must be dismissed <u>with</u> prejudice. I therefore modify

the CMO insofar as it applies to these particular BELO cases to permit filing of these motions to dismiss with prejudice, pursuant to CMO ¶ IV(1)(D).

## RECOMMENDATION

For all the forgoing reasons, it is **RECOMMENDED** that defendants' motions be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___15th___ day of July, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.